**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5865-17T4

DANIEL J. DALTON,

     Plaintiff-Appellant,

v.

DIANE DALTON,

     Defendant-Respondent.

_____

Submitted June 6, 2019 – Decided July 19, 2019

Before Judges Simonelli and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0485-08.

Stark & Stark, PC, attorneys for appellant (Corrine Evanochko Cooke, of counsel and on the briefs; Taylor Wellington Brownell, on the briefs).

Ulrichsen Rosen & Freed, LLC, attorneys for respondent (Wendy Michelle Rosen, of counsel and on the brief; Rebecca Day, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Daniel J. Dalton appeals from a Family Part order denying his request to compel additional discovery from defendant Diane Dalton relating to cohabitation issues that could affect plaintiff's ongoing obligation to pay alimony and awarding counsel fees of $8000 to defendant relative to her motion to enforce litigant's rights. The trial judge denied plaintiff's cross-motion because he did not make a prima facie showing of cohabitation that would justify expansive discovery and intrusion upon defendant's privacy. For the reasons that follow, we affirm.

I.

The parties were divorced in December 2008 after a twenty-four year marriage. As part of their marital settlement agreement (MSA) incorporated into their final judgment of divorce, plaintiff agreed to pay defendant $6200 monthly in permanent alimony, plus annual cost of living adjustment (COLA) increases based upon the Consumer Price Index percentage, less $653 per month after meeting his social security tax contribution each year. At the time of the divorce, plaintiff was earning $240,000 annually and bonuses in the $100,000 range. He agreed to pay defendant thirty-percent of his gross annual bonus, not to exceed $31,000 per year, as additional alimony, conditioned on plaintiff maintaining employment with his then-employer, and so long as "its

compensation scheme remains materially the same as the date of [their] [a]greement[.]"

The parties agreed in the MSA that alimony would terminate upon the happening of certain events. Paragraph ten set forth the cohabitation language:

> The aforesaid alimony payments may be modified or terminated upon application to the [c]ourt by [plaintiff] in the event of [defendant's] cohabitation with an unrelated person pursuant to Gayet v. Gayet, 92 N.J. 149 (1983) and Ozolins v. Ozolins, 308 N.J. Super. 273 (App. Div. 1998). [Defendant] shall have a duty to notify [plaintiff] in the event she is cohabiting with an unrelated person.

On May 1, 2018, defendant moved to adjudicate plaintiff in violation of litigant's rights because he failed to add COLA increases to her alimony payments for several years; accrued arrearages of $13,632 in child support for the parties' three children, $9,674.64 in tuition and college related costs, and $3,357.42 for the children's unreimbursed healthcare expenses; and owed defendant his fifty-percent share of the cost for repairs to prepare the former marital home for sale. In opposition, plaintiff argued defendant's motion was barred by the doctrine of laches because she [sat] "on her rights for [an] extended length of time and, all of a sudden, asks [the] [c]ourt to award her a significant pay day."

Plaintiff cross-moved to modify or terminate alimony based upon defendant's alleged cohabitation with her paramour, S.G.[1] The judge granted defendant's motion and denied plaintiff's cross-motion.

According to plaintiff, defendant has maintained a longstanding relationship with S.G., in which the two of them allegedly interact and hold themselves out as the equivalent of spouses. In support of his contentions, plaintiff included in his moving papers S.G.'s mother's obituary from February 2010 naming defendant as S.G.'s girlfriend, photographs of the couple travelling to Hawaii, Vermont, and New York, social media postings, and evidence of them spending holidays together. Plaintiff certified that defendant has been cohabiting with S.G. for ten years.

As further support of his contentions, plaintiff submitted two private investigator's reports dated March 2, 2016 and June 5, 2018. The 2016 report documented defendant spending four overnights at S.G.'s residence over an eight-day period. In opposition, defendant claimed only two of these days included overnight stays. The 2018 report revealed defendant and S.G. reside within 3.3 miles of each other, and included surveillance of the couple at the Wildflowers Inn on June 2, 2018. They were "observed parking next to a closed

---

[1] We use initials to protect the confidentiality of the third party.

dry cleaners and walking on foot into the restaurant portion of the establishment[,]" and several hours later, they drove to S.G.'s residence at 11:01 p.m. in defendant's vehicle which "pulled from the roadway and [drove] down the curved driveway and from sight." Surveillance continued on June 3, 2018, "nearly two hours after [defendant] and [S.G.] returned to the residence. At this time with no observation of [defendant] leaving the residence, the surveillance was ended for the evening."

Defendant denied spending that night at S.G.'s house, and submitted surveillance footage from S.G.'s neighbor's house which showed her leaving S.G.'s house approximately five minutes after pulling into his driveway on June 2, 2018. Further, defendant provided a phone record confirming she called S.G. at 11:22 p.m. that evening to inform him she arrived home safely.

Defendant certified that she and S.G. "go out as a couple and socialize together[,]" but denied spending a significant amount of time with him. While S.G. was convalescing following chemotherapy, defendant admitted she assisted him "just as [she] would have assisted anyone else with whom [she] had a relationship[,]" and refuted plaintiff's assertion that she "nursed and cared for [S.G.] throughout his entire chemotherapy and radiation treatment on a daily basis." Defendant also certified she spends some holidays with S.G., but not all

5

of them because they spend most of them with their respective children. Plaintiff submitted only one photograph from Thanksgiving 2017 illustrating defendant and S.G. spent the holiday together, and defendant rebutted his argument by stating most holidays were not spent together, including Christmas 2017. Defendant certified the couple does "not function as or resemble a family unit[,]" and there was only one occasion in the past ten years when their children were all together.

Defendant certified the couple has "no economic interconnectedness. [She does] not receive any economic benefit from [her] dating relationship with [S.G.] beyond the benefit that is likely associated with most dating relationships[,]" like shared dinners and limited travel. Defendant offered proofs showing she and S.G. have separate mailing addresses, and that each pays their own bills and expenses. Her representation was supported by copies of utility bills, her bill-pay bank summary, cancelled checks, and current and former leases, none of which include S.G.'s name. The judge found:

> [T]hat plaintiff has failed to establish a prima facie case of cohabitation. Plaintiff offers no proof that defendant and the alleged cohabitator have overnight[] stays with any frequency at all. There are no material facts in dispute that would warrant a plenary hearing. . . . [D]efendant makes no admissions regarding overnights and plaintiff does not establish any frequency of duration of overnights.

A-5865-17T4

The judge deemed the 2016 surveillance report outdated and gave it little weight. No financial independence was shown by plaintiff, and the judge found he failed to submit "any proof of comingling of finances between defendant and the alleged cohabitator." The judge further held that social media postings, some vacations, some holidays, holding themselves out as a couple, and defendant being mentioned in S.G.'s mother's obituary "fall short of establishing a prima facie showing that defendant is in a cohabiting relationship tantamount to marriage." "[P]laintiff provides no proofs that defendant and the third party named in plaintiff's [n]otice of [m]otion spend any meaningful amount of overnights together."

On appeal, plaintiff argues that the judge abused his discretion by failing to enforce the terms of the MSA; find plaintiff established a prima facie case of cohabitation; permit discovery or conduct a plenary hearing; and abused his discretion by awarding defendant counsel fees.

## II.

Plaintiff argues that the judge erred by evaluating the cohabitation issue under Konzelman v. Konzelman, 158 N.J. 185 (1999), instead of the standards set forth in Gayet, and Ozolins, as contemplated in their MSA. We disagree.

7

We first consider the well-settled principles that guide our review. Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. To make such a modification, a showing of "changed circumstances" is required. Lepis v. Lepis, 83 N.J. 139, 146 (1980); see Weishaus v. Weishaus, 180 N.J. 131, 140-41 (2004). To determine whether there is a prima facie showing of changed circumstances, the court must consider the terms of the order at issue and compare the facts as they existed when the order was entered with the facts at the time of the motion. See Faucett v. Vasquez, 411 N.J. Super. 108, 129 (App. Div. 2009).

A prima facie showing of cohabitation constitutes sufficient changed circumstances under Lepis. Gayet, 92 N.J. at 154-55. Cohabitation has been defined as "an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Konzelman, 158 N.J. at 202. Where a supporting spouse seeks to decrease or terminate alimony because of the dependent spouse's cohabitation, "the test for modification of alimony is whether the relationship has reduced the financial needs of the dependent former spouse." Gayet, 92 N.J. at 150. Alimony may be modified "when (1) the third party contributes to the dependent spouse's support, or (2)

the third party resides in the dependent spouse's home without contributing anything toward the household expenses." Id. at 153.

"[A] showing of cohabitation creates a rebuttable presumption of changed circumstances shifting the burden to the dependent spouse to show that there is no actual economic benefit to the spouse or cohabitant." Reese v. Weis, 430 N.J. Super. 552, 570 (App. Div. 2013) (quoting Ozolins, 308 N.J. Super. at 245). The court must focus on the cohabitant's economic relationship to discern "whether one . . . 'subsidizes the other.'" Id. at 571 (quoting Boardman v. Boardman, 314 N.J. Super. 340, 347 (App. Div. 1998)). Whether this economic benefit exists requires a fact-intensive inquiry by the trial judge. Id. at 576.

Our scope of review of the trial court's decision is limited. "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). Each individual motion for modification is particularized to the facts of that case, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). We will not disturb the trial court's decision on alimony unless we

conclude that the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or must otherwise be well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole.

[Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).]

Plaintiff claims the judge rewrote the parties' MSA by applying the incorrect standard and failed to follow our Supreme Court's mandate in Quinn v. Quinn, 225 N.J. 34, 45 (2016), which requires a court to "discern and implement the intentions of the parties."  In support of his position, plaintiff relies on the judge's reference to Konzelman:

As [our] Supreme Court explained in Konzelman . . . cohabitation is typified by the existence of a marriage-like relationship "shown to have stability, permanency, and mutual interdependence."  [158 N.J. at 202.] . . . Although "living together, intertwined finances such as joint bank accounts, shared living expenses and household chores" may support a finding of cohabitation, such illustrative examples must not be considered in a vacuum.  [Ibid.]  "A mere romantic, casual or social relationship is not sufficient," nor is simply sharing a "common residence, although that is an important factor."  Ibid.

Plaintiff notes Konzelman was decided in 2008, at the time the parties entered into their MSA, but they specifically agreed to abide by the previous holdings in Gayet and Ozolins.

Not only does plaintiff contend the judge's application of Konzelman was improper, he also claims he met his burden of establishing a prima facie case of cohabitation pursuant to Gayet and Ozolins. The Gayet court held that a dependent spouse's cohabitation with another constitutes a change in circumstances, warranting a modification or termination of the supporting spouse's alimony obligation. 92 N.J. at 154-55. But Gayet also established "that cohabitation of the dependent spouse without more was not a changed circumstance that could justify the reduction or termination of alimony by the supporting spouse." Konzelman, 158 N.J. at 196. Accordingly, plaintiff's argument lacks merit.

In his certification, plaintiff argues the 2014 amendment to the alimony statute, N.J.S.A. 2A:34-23, codified the issue of cohabitation. The statute sets forth the following considerations that bear upon cohabitation issues:

> n. Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with

A-5865-17T4

marriage or civil union but does not necessarily maintain a single common household.

When assessing whether cohabitation is occurring, the court shall consider the following:

(1)    Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2)    Sharing or joint responsibility for living expenses;

(3)    Recognition of the relationship in the couple's social and family circle;

(4)    Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5)    Sharing household chores;

(6)    Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and

(7)    All other relevant evidence.

In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship.  A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

[(Emphasis added).]

12

Prior to the Legislature's adoption of the 2014 amendments, the legal criteria for cohabitation were not specified by statute but instead embodied in case law. See, e.g., Konzelman, 158 N.J. at 195-203. Plaintiff argues in the alternative that N.J.S.A. 2A:34-23(n) can be applied here, as opposed to the Gayet and Ozolins holdings, because in any event, defendant and S.G. satisfy all the factors except for residing together on a full-time basis.

Plaintiff further argues that because he established a prima facie case of cohabitation, the burden shifted to defendant to refute the presumption of an economic benefit as a result of cohabitation. Ozolins, 308 N.J. Super. at 248-49. "[A] dependent spouse must prove he or she remains dependent on the former spouse's support." Reese, 430 N.J. Super. at 571. In Ozolins, we remanded the matter because the trial judge improperly terminated the former wife's alimony payments based upon her failure to rebut the former husband's prima facie showing of cohabitation, and because the former husband was diagnosed with prostate cancer, thereby diminishing his earning capacity. 308 N.J. Super. at 247. We held the former wife's cohabitation did "not justify a total termination of alimony[,]" because we reasoned that the economic benefit she derived from cohabitation was less than her monthly alimony payments and her former husband did not prove his cancer diagnosis reduced his earning

A-5865-17T4

capacity – in fact he testified he continued to work despite his prostate cancer – as he maintained the same level of income for the prior six years. Id. at 249. We remanded the matter for a modification of the alimony amount and we did not terminate alimony.

Here, the judge thoughtfully cited to Gayet and Ozolins throughout his opinion. Citing to Gayet, 92 N.J. at 154-55, the judge recognized "an alimony payor who alleges cohabitation must first present a prima facie case that his or her former spouse is in such a cohabiting relationship tantamount to marriage[,]" and noted "[i]f such a prima facie showing is made, the disputing ex-spouses may then engage in mutual discovery." The judge also quoted Gayet's holding that the trial court must evaluate whether the relationship "bears the generic character of a family unit as a relatively permanent household." 92 N.J. at 149 (quoting State v. Baker, 81 N.J. 99, 108 (1979)). Further, the judge noted that "[t]he payor's prima facie showing of cohabitation creates a rebuttable presumption of changed circumstances, which the dependent ex-spouse may then attempt to rebut 'with proof that the need for [spousal] support remains the same[,]'" quoting Ozolins, 308 N.J. Super. at 248-49. (first alteration in original). Therefore, we reject plaintiff's claim that the judge re-wrote the MSA.

Plaintiff contends he met this burden to prove S.G.'s relationship with defendant reduces her financial need. In addition to his proofs, plaintiff contends the 2018 surveillance report includes a picture from S.G.'s Facebook profile, which shows the couple on vacation, and indicates the photo was posted on October 5, 2012, "seemingly from Hawaii," during defendant's birthday period. Defendant commented "[t]he best birthday gift ever . . . Thank you to my sweet man!" on the photo, which received four comments from defendant's friends, as well as twenty-five "thumbs up" by others. The report concludes "[t]his clearly indicates an acknowledgement[] by friends and family of the post and content."

Plaintiff also certified S.G. owns vacation homes in Vermont and in Florida, which defendant frequently visits, and the parties' children have also visited. According to plaintiff, this "establishes defendant and her paramour's long-lasting relationship, as well as her reduced financial needs as a result of her paramour's substantial entanglement in her everyday life." The 2016 surveillance report indicated defendant spends fifty-percent of overnights with S.G., but surveillance only spanned eight days.

Defendant counters that plaintiff is attempting to enforce terms of the MSA that do not exist. She claims, "[a]lthough [p]laintiff does not clearly

articulate it, the essence of his argument is that . . . the MSA requires the trial court to skip the prima facie showing of cohabitation and move immediately to the economic needs analysis." Defendant reiterates that before applying the economic needs test, plaintiff must make a prima facie showing of her cohabitation, the judge was required to look beyond the holdings in Gayet and Ozolins because those cases determined whether it was justified for the supporting spouse to continue payments after cohabitation was established, by admission of the dependent spouses, and the judge aptly referred to Quinn and J.B. v. W.B., 215 N.J. 305, 326 (2013), in finding the strong public policy favoring settlement agreements in matrimonial matters, as well as other cases determine whether a plenary hearing was required.

Ultimately, the judge determined plaintiff's proofs were insufficient to establish a prima facie case of cohabitation. The judge held the prima facie showing of cohabitation was established in Gayet by "a dependent spouse [who] admittedly cohabited four nights a week for a three-and-one-half month period. 92 N.J. at 150. Here, defendant made no admissions regarding overnights and plaintiff did not establish any frequency or duration of overnights." In fact, defendant's July 12, 2018 certification states:

> I live only with my son. [S.G.] lives on his own, in his own house. We do not have any intertwined finances

such as joint bank accounts; we do not share any living expenses and we do not share household chores. We do not and have not lived as [h]usband and [w]ife.

Giving plaintiff "every reasonable inference[,]" the judge found he only established one overnight stay in 2018 and four overnight stays in 2016, whereas defendant provided proofs of separate finances and living arrangements from S.G. The judge reasoned:

> [Plaintiff's] private investigator reported one overnight stay in 2018. Taking that substantially refuted finding as true – which eliminates any factual disputes between the parties – and giving him every reasonable inference from that fact, plaintiff's evidence falls far short of establishing that defendant and the alleged cohabitator spend any significant number of overnights together. One night does not cohabitation make.

Defendant contends that even if plaintiff satisfied his burden and made a prima facie showing of cohabitation, he failed to provide proofs that a modification or termination of alimony is warranted under Gayet. We agree. The judge found:

> The present record lacks any evidence that the couple's finances are intertwined or that defendant is financially dependent upon the significant other. There is no proof of joint bank accounts or other joint asset holdings of liabilities; no proof that the couple shares living expenses; and no proof of any enforceable promise of support. There is no proof of shared household chores.

17

In both <u>Gayet</u> and <u>Ozolins</u>, the supported spouses admitted to cohabitation. <u>See</u> <u>Gayet</u>, 92 N.J. at 150 (where the parties stipulated to the wife's cohabitation with a significant other for three and a half months); <u>see also</u> <u>Ozolins</u>, 308 N.J. Super. at 246 (where the dependent spouse conceded to cohabitation with a male friend for economic reasons). Accordingly, only after a prima facie showing of cohabitation was made was the trial court able to evaluate the economic impact of cohabitation. <u>Ozolins</u>, 308 N.J. Super. at 247. For this reason, plaintiff's argument that the judge improperly rewrote the parties' MSA and applied the incorrect standard is devoid of merit.

## III.

Plaintiff next argues that despite the judge's alleged failure to apply the <u>Gayet</u> and <u>Ozolins</u> standards, plaintiff nevertheless established cohabitation pursuant to <u>Konzelman</u>. He claims <u>Konzelman</u> set forth a three-prong test to determine whether a dependent spouse is cohabiting with another. The three factors are: (1) common residence; (2) an intimate relationship wherein the parties undertake duties and privileges generally associated with marriage; and (3) a serious and lasting relationship. Plaintiff argues the judge failed to "delineate or define the factors outlined in <u>Konzelman</u>[,]" and placed little weight on the second and third factors and substantial weight on the first factor.

18

Konzelman differed from the economic needs test set forth in Gayet, and found that an agreement between the parties to terminate alimony upon cohabitation is valid "without regard to the economic consequences of that relationship."  158 N.J. at 196.  The Court reasoned that N.J.S.A. 2A:34-25 provides for termination of alimony upon remarriage,

> without regard to the financial condition of the dependent spouse, evincing an understanding on the part of the Legislature that the autonomous decision of the dependent former spouse to form new bonds creating mutual obligations of support must be recognized, and . . . therefore, supplant[s] the legal vestiges of the prior marriage.
>
> [Ibid.]

When a "dependent spouse enters a relationship that has all the indicia of a marriage[,]" a settlement agreement terminating alimony is enforceable.  Id. at 197.  The Court held:

> [A] specific consensual agreement between the parties to terminate or reduce alimony based on a predetermined change of circumstances does not require an inquiry into the financial circumstances or economic status of the dependent spouse so long as the provision itself is fair.  Thus, where the parties have agreed that cohabitation will constitute a material changed circumstance, and that agreement has been judged fair and equitable, the court should defer to the arrangements undertaken by the parties.  In that situation where the dependent spouse has entered into a new marriage-like relationship, the court need not delve

into the economic needs of the dependent former spouse.

[Ibid.]

These agreements must be consensual, fair and equitable. Id. at 198-201. "A mere romantic, casual or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony." Id. at 202. "While the use of consensual agreements to resolve marital controversies is generally favored, we seriously question whether the language of the provision at issue or the proofs proffered are sufficiently clear to justify termination of alimony under the standard of enforceability recognized in [Konzelman]." Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006). A supporting spouse must show "stability, permanency and mutual interdependence" between the dependent spouse and their significant other. Konzelman, 158 N.J. at 202. Although living together is an important factor, cohabitation requires more than a common residence. Ibid.

> Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.

A-5865-17T4

[Ibid.]

We are mindful that the materials submitted to the judge—including the vacation S.G. paid for to Hawaii to celebrate defendant's birthday—reflect that he and defendant take part with one another in a variety of social and family activities. Even so, the present record lacks any evidence that the couple's finances are intertwined or that defendant is financially dependent upon S.G. We agree with the judge that plaintiff also failed to establish a prima facie case under Konzelman, and find no abuse of discretion.

IV.

Plaintiff argues that the judge abused his discretion by failing to give proper weight to the 2016 surveillance report by failing to properly consider Rule 403. N.J.R.E. 403. We disagree.

Rule 403 provides: "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." The judge found the 2016 "surveillance report—which documented four overnight stays—out of date; this is plaintiff's application in 2018 and the [c]ourt puts little weight in a report from 2016." Moreover, the judge found that even if he had given equal weight to both reports,

at best they collectively established five overnights over a three year period, and not fifty-percent of the time as alleged by plaintiff.

We reject plaintiff's argument that if the judge had given more weight to the 2016 report, the balance would have tipped in favor of a prima facie showing of cohabitation. The critical factor is "[t]he extent of actual economic dependency[.]" Gayet, 92 N.J. at 154. The economic benefit to either cohabitator must be sufficiently material to justify relief. Id. at 153-54. Our review of a trial judge's evidentiary rulings are subject to an abuse of discretion standard, Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010), and not a de novo standard as urged by plaintiff.

> [A]ppellate review of a trial court's application of the balancing test of [Rule] 403 . . . is subject to the abuse of discretion standard, which sustains the trial court's ruling "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted."
>
> [State v. Lykes, 192 N.J. 519, 534 (2007) (third alteration in original) (quoting Verdicchio v. Ricco, 179 N.J. 1, 34 (2004)).]

Even if all of the materials proffered by plaintiff are considered, we remain convinced of the soundness of the judge's finding that plaintiff has not

presented a prima facie case. Therefore, the judge did not abuse his discretion under Rule 403 in respect of the 2016 surveillance report.

V.

Next, plaintiff argues that the judge abused his discretion by failing to permit a period of discovery or conducting a plenary hearing to establish economic interdependence between defendant and S.G. We reject this argument.

If a prima facie showing of cohabitation is made, then the disputing ex-spouses may engage in mutual discovery. Gayet, 92 N.J. at 154-55. Here, the judge concluded "[defendant] and S.G. are in a relationship, but they are not [cohabiting]. . . . They do not live together. They do not have intertwined finances. They do not share living expenses. . . . They do not live as husband and wife." Regardless of whether the criteria expressed in case law or codified in N.J.S.A. 2A:34-3(n) are applied, the record amassed by plaintiff was reasonably deemed insufficient by the judge to rise to the level of a prima facie case that would justify the additional discovery he sought.

We also reject plaintiff's argument that a plenary hearing was necessary. In concluding a plenary hearing was unwarranted, the judge stated:

> It is customary for the factual disputes relating to the alleged cohabitation to be resolved at a plenary hearing,

23

at which the [c]ourt could evaluate the credibility of the competing witnesses. See, e.g., [Winegarden v. Winegarden, 316 N.J. Super. 52, 56 n.1 (App. Div. 1998)]. Conducting such a plenary hearing in cohabitation disputes is consistent with the general principle in post-judgment matrimonial cases that "[d]isputes of material fact should not be resolved on the basis of [written] certifications." [Palmieri, 388 N.J. Super. at 564]; see also Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976).

[(Third and Fourth alterations in original).]

The judge aptly noted, "[t]he need for a plenary hearing is not inexorable, however, and the [c]ourt may dispense with a hearing if the parties present no disputed issues of material fact and the matter is otherwise suited for disposition on the papers." Ibid. Because plaintiff failed to establish a prima facie showing of cohabitation, the judge correctly determined there were "no material facts in dispute that would warrant a plenary hearing[,]" and we conclude there was no abuse of discretion.

Plaintiff failed to set forth his argument that the judge failed to articulate his reasons for denying discovery and a plenary hearing pursuant to Rule 1:7-4(a) in a proper point heading in violation of Rule 2:6-2(a)(6). Accordingly, we decline to consider the argument. See Mid-Atl. Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (declining to consider a "cursory discussion" that was "raised for the first time . . . at the end of [the

plaintiff]'s brief without a separate point heading"); Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 2:6-2 (2019).

VI.

Lastly, the record belies plaintiff's argument that the judge gave particular weight to factors three, seven, and nine of Rule 5:3-5(c),[2] which permits an award of fees in a Family Part action. The judge explicitly evaluated all of the Rule 5:3-5(c) factors and determined that "defendant prevailed on her claims; plaintiff did not[,]" emphasizing the entirety of defendant's motion sought enforcement of plaintiff's obligations set forth in the MSA.

Regarding factors one and two, the judge found plaintiff to be in "a superior ability to pay his own counsel feels and those of defendant[.]" As to the bad or good faith of the parties' claims, the judge found "[p]laintiff's asserted

---

[2] Pursuant to Rule 5:3-5(c) the court may consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

25

defense of laches to have been made in good faith, even if not successful. The [c]ourt finds his position on cohabitation to be less so. Consistent with the results obtained, the [c]ourt finds defendant's positions and claims to be reasonable and advanced in good faith." Further, plaintiff incurred $6,762.50 in counsel fees and defendant incurred $9914 in fees.

Additionally, the judge found factor five to be irrelevant since this was the parties' first post-judgment matter. Regarding factor eight, the judge found "the entirety of defendant's [motion] sought to enforce rights and obligations set forth in the parties' agreement." And, the judge recounted "that the parties' agreement contains a provision calling for reasonable counsel fees and costs in the event that a party has to litigate enforcement issues." The judge noted, "the Appellate Division has made clear, it is error to ignore an attorney's fee award provision in a matrimonial settlement agreement[,]" citing to Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008).

The judge next considered N.J.S.A. 2A:34-23, which provides:

> The court may order one party to pay . . . [for the other's] legal services when the respective financial circumstances of the parties make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule. . . . and shall consider the factors set forth in the court rule on

26

counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.

The judge indicated he "assign[ed] particular weight to factors" one, two, three, six, seven, eight and nine. He did not state he afforded any one factor more weight than the others, and he detailed the concept of bad faith in his opinion. Plaintiff defaulted on six required payments totaling $70,865.75, which was owed to defendant. Accordingly, the judge properly exercised his discretion in awarding counsel fees to defendant.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-5865-17T4