909 A.2d 1138 (2006)
388 N.J. Super. 562
Theresa PALMIERI, Plaintiff-Appellant/Cross-Respondent,
v.
Angelo PALMIERI, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2006.
Decided November 15, 2006.
*1139 Howard B. Felcher, New York City, argued the cause for appellant/cross-respondent (Howard B. Felcher, attorneys; Mr. Felcher, of counsel and on the brief; Jason A. Mizrahi, on the brief).
Deborah E. Nelson, Short Hills, argued the cause for respondent/cross-appellant (Budd Larner, attorneys; Ms. Nelson, of counsel and on the brief; Christina M. Reger, on the brief.).
Before Judges DONALD S. COBURN,[1] R.B. COLEMAN and GILROY.
The opinion of the court was delivered by
R.B. COLEMAN, J.A.D.
Plaintiff, Theresa Palmieri, appeals from an order dated July 15, 2005, terminating the alimony obligation of defendant, Angelo Palmieri, pursuant to a clause in their property settlement agreement, retroactive to July 7, 2005. That clause provides, among other things, that the husband's obligation to pay alimony shall terminate on "the [w]ife's residing with an unrelated person or vice versa, regardless of the financial arrangements between the wife and said unrelated person." Defendant cross-appeals from the same order, arguing that the court should terminate alimony retroactive to the date of cohabitation and that the court erred by denying him counsel fees. We reverse the order terminating alimony on the basis of conflicting certifications and remand for a plenary hearing.
In an effort to confirm his suspicions that his ex-wife was residing with an unrelated male, defendant hired a private investigator to conduct surveillance on plaintiff's home. The investigator observed the home for twenty-two non-consecutive days in slightly less than three months. An unrelated male, Michael Rosiak, was observed walking the dog, taking out the garbage, and departing from and arriving at the home with plaintiff.
On April 15, 2005, defendant filed a motion to terminate alimony, supported by a certification from the investigator and his own. Plaintiff opposed the motion, and cross-moved for counsel fees. In her certification, plaintiff acknowledged that her dating relationship with Rosiak began shortly before defendant's investigation and that Rosiak had stayed overnight with her on occasion. In spite of those acknowledgements, *1140 plaintiff denies that Rosiak was residing with her. Plaintiff states that Rosiak has his own residence in Verona, where he spends most of his time and receives his mail. She denies that he ever contributed toward her daily living expenses or subsidized her lifestyle in any way. Plaintiff certified, "My relationship with Mr. Rosiak has in no way affected my economic needs and resources. We have not lived in a situation as if we were man and wife."
Based on the certification and log of the investigator, the trial court found plaintiff and Rosiak were residing together at plaintiff's home. The court found that plaintiff's contrary certification, that Rosiak only "occasionally spent overnights," was not credible, "in the face of [the investigator's] certification and report."
Disputes of material fact should not be resolved on the basis of certifications nor in reliance upon ambiguous terms in a property settlement agreement. Conforti v. Guliadis, 128 N.J. 318, 328-29, 608 A.2d 225 (1992). When a genuine issue of material fact exists, a plenary hearing is required. Shaw v. Shaw, 138 N.J.Super. 436, 440, 351 A.2d 374 (App.Div.1976).
While the use of consensual agreements to resolve marital controversies is generally favored, we seriously question whether the language of the provision at issue or the proofs proffered are sufficiently clear to justify termination of alimony under the standard of enforceability recognized in Konzelman v. Konzelman, 158 N.J. 185, 202, 729 A.2d 7 (1999). In Konzelman, the Supreme Court held, "A mere romantic, casual or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony. Such an agreement must be predicated on a relationship of cohabitation that can be shown to have stability, permanency and mutual interdependence." Ibid.
The language here, requiring only that "the wife[ ] resid[e] with an unrelated person or vice versa, regardless of the financial arrangements," is much broader than the language of the agreement found to be enforceable in Konzelman, and it raises greater public policy concerns. An unlimited provision such as the one at issue may be perceived as arbitrary, capricious and unreasonable, since it would preclude plaintiff from providing shelter to an ailing relative or even allowing plaintiff to receive care from a live-in nurse if she needed such care. Though hypothetical situations such as these would purport to nullify plaintiff's right to receive alimony, such a literal construction of the property settlement agreement would lead to an absurd result. Moreover, such a hypothetical construction would go well beyond what the Konzelman Court determined would be enforceable.
Accordingly, we reject defendant's suggestion that essentially any relationship, romantic or not, with any person who stayed overnight in plaintiff's home, would result in a forfeiture of her right to receive alimony. On the other hand, we do not believe the record was sufficiently developed to support a reliable finding as to the nature of plaintiff's relationship with Rosiak or to demonstrate whether the purpose and intent of the language of the property settlement agreement would reasonably or permissibly warrant the termination of plaintiff's entitlement to alimony. Konzelman, supra, 158 N.J. at 202, 729 A.2d 7; Shaw, supra, 138 N.J.Super. at 440, 351 A.2d 374. Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.
NOTES
[1] Judge Coburn did not participate in oral argument. However, the parties have consented to his participation in the decision.