**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0441-15T2

ELENA KLYACHMAN,

    Plaintiff-Respondent,

v.

MICHAEL J. GARRITY,

    Defendant-Appellant.

_____

Argued November 2, 2016 — Decided June 26, 2017

Before Judges Fuentes, Carroll and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1642-12.

Michael E. Spinato argued the cause for appellant (Michael E. Spinato, P.C., attorney; Jacqueline M. Pimpinelli, on the brief).

Deirdre Rafferty Thompson argued the cause for respondent (Trapanese & Trapanese, attorney; Ms. Rafferty Thompson, on the brief).

PER CURIAM

Defendant Michael J. Garrity and plaintiff Elena Klyachman married in October 1999 and divorced on July 24, 2012. They had one child, a girl born in 2003 who will be fourteen years old in

December 2017. The final judgment of divorce (JOD) incorporated the terms of a Property Settlement Agreement (PSA), which the parties voluntarily negotiated and entered into with the assistance of independent counsel. The PSA addressed all of the issues associated with the dissolution of the marriage.

This appeal concerns the interpretation and enforcement of Articles III and IV of the PSA. Article III delineates defendant's obligation to pay plaintiff limited duration alimony in the sum of $21,000 per year for a period of six years, commencing August 1, 2012. At issue here is Subsection 3.3(d), which terminates this alimony obligation if plaintiff "cohabitat[es] with an unrelated person in accordance with applicable New Jersey Law."

Article IV of the PSA addresses the child's custody and parenting time. It was supplemented by a Consent Order executed by the parties on May 18, 2012. Article IV comprehensively and meticulously describes the custodial and decision-making protocols for apprising and involving the parents of any matter touching upon the child's health and emotional well-being. By way of example, Subsection 4.6 under Article IV "expressly" prohibits the parties from doing

> anything to alienate the child's affection or to color the child's attitude toward the other. On the contrary, both parties shall cooperate in every way to help the child better adjust [herself] to the circumstances

> as they now exist, and may in the future exist. Both parties shall conduct themselves in a manner that shall be best for the interest, welfare and happiness of the child, and neither party shall do anything, which shall adversely affect the morals, health and welfare of the child.

The Consent Order also requires the parties to "consult and confer with each other with regard to all major issues relating to the child's health, safety, welfare and education." Under the Consent Order, the parties agree "to attempt to work together [and] to make decisions that are in the best interest[s] of the child."

On July 21, 2015, defendant filed a post-judgment motion in the Family Part seeking to terminate his alimony support obligation under Article III, Subsection 3.3(d) of the PSA, claiming plaintiff was in a romantic relationship and "cohabiting" with an unrelated man, as that term is defined in N.J.S.A. 2A:34-23(n). Defendant also sought to modify the parenting time arrangement from one that designated plaintiff as "the parent of primary residence" to a shared-custody arrangement because he recently purchased a house in the Borough of Fair Lawn that had a separate bedroom for his teenaged daughter.

Plaintiff filed a cross-motion opposing defendant's application and seeking to compel defendant to pay his fair share of the child's extracurricular activities, provide proof he is

maintaining life insurance as required under the PSA, and refrain from disparaging plaintiff in the child's presence. In particular, plaintiff claims defendant made derogatory remarks about her cultural background as a Russian immigrant.

The only evidence presented to the Family Part in support of the relief requested came from the parties' conflicting certifications. After considering the arguments of counsel, the judge denied both motions. With respect to defendant's motion, the judge found his certifications did not allege sufficient facts to establish cohabitation within the meaning of N.J.S.A. 2A:34-23(n). The judge also found defendant did not present sufficient facts to establish a prima facie case of changed circumstances to warrant a plenary hearing concerning the custody of the child.

In this appeal, defendant argues the Family Part erred when it found he did not assert sufficient facts to warrant a plenary hearing on both of these issues. We agree and remand for the Family Part to enter a case management order (CMO) permitting the parties to conduct limited discovery on both issues raised by defendant. At the conclusion of discovery, the judge shall determine whether a plenary hearing is warranted and make factual findings and conclusions of law based on the evidence presented therein.

I

## Cohabitation

In the certification submitted in support of the motion to terminate his limited duration alimony obligation, defendant averred that plaintiff has had an ongoing romantic relationship with her coworker for the past ten years, which predates the filing of the divorce complaint. Defendant claims plaintiff has taken many vacations in which both her daughter and her paramour's own children shared a common residence. He also claims plaintiff and this man openly present themselves as husband and wife at social gatherings.

According to defendant, starting in June 2015, plaintiff's paramour "rented the top floor of the two-family home where [p]laintiff resides and occupies the first floor." Although defendant does not know whether they have "intertwined their finances," he claims they are cohabitating as husband and wife in all other respects. Defendant argues he presented sufficient evidence of cohabitation to justify court-ordered discovery limited to plaintiff's finances.

In her response certification, plaintiff denied she has had "a romantic relationship" with a coworker for ten years. But she conceded she has "a boyfriend and [d]efendant is upset that I am happy." Plaintiff denied living with anyone other than her

daughter. She admitted she lives in a two-family house and "[t]he man I am now dating . . . is renting the other apartment." However, she characterized this arrangement as "neighbors" not cohabitants. Plaintiff also confirmed that she and her daughter have vacationed with her boyfriend and his children. She denied any suggestion that she ever intermingled her finances with her boyfriend.

The Legislature requires a Family Part judge to consider the following statutory factors in determining whether alimony should be suspended or terminated:

> Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.
>
> When assessing whether cohabitation is occurring, the court shall consider the following:
>
>> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>>
>> (2) Sharing or joint responsibility for living expenses;
>>
>> (3) Recognition of the relationship in the couple's social and family circle;
>>
>> (4) Living together, the frequency of contact, the duration of the relationship, and other indicia of

> a mutually supportive intimate personal relationship;
>
> (5) Sharing household chores;
>
> (6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.]25:1-5;[1] and
>
> (7) All other relevant evidence.
>
> [N.J.S.A. 2A:34-23(n) (emphasis added).]

The motion judge acknowledged that a court "may find cohabitation in instances where the parties are not actually living together." The judge also observed that "there doesn't appear to be any intertwining of finances or expenses." With respect to the duration of the relationship, the judge found "[t]hey have been going out for a long time." The motion judge finally concluded:

> [T]here are factors which weigh in favor of a finding of cohabitation, and there are factors, frankly, that weigh against it. I realize that often courts are compelled to conduct plenary hearings when there are material issues of disputed fact. I don't believe in this case, although I acknowledge that the plaintiff, again, there's no disputed fact here, the plaintiff and her boyfriend live under the quote "same roof" end quote. But . . . the evidence I've heard and the submissions and the certifications leads me to believe that the defendant has not made out a prima facie showing of cohabitation.

---

[1] N.J.S.A. 25:1-5 refers to a legally binding written promise of support which replaced the common law oral agreements commonly known as "palimony."

It is well-settled that disputes of material facts should not be resolved on the basis of certifications. Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006). This is because warring certifications have the "unfortunate effect of yielding more heat than light, ultimately leaving unresolved the central issues raised by the parties." D.A. v. R.C., 438 N.J. Super. 431, 439 (App. Div. 2014). It is undisputed that Article III, subsection 3.3(d) of the PSA provides for the termination of alimony if defendant shows plaintiff cohabitates "with an unrelated person in accordance with applicable New Jersey law." The parties further agree that the phrase "applicable New Jersey law" refers to the standards established by the Legislature in N.J.S.A. 2A:34-23(n).

Here, the motion judge found plaintiff is in a long-term romantic relationship with an unrelated man who now resides in the same two-family dwelling that she occupies. Defendant also alleged plaintiff and her paramour vacation together with both of their children and present themselves as husband and wife in social gatherings. Based on this record, we are satisfied the motion judge erred in not affording defendant the opportunity to conduct limited discovery to develop competent evidence to prove his case in a plenary hearing. The Family Part Judge retains the discretion to limit both the scope and method of discovery.

With respect to the issue of alimony, we suggest the motion judge limit the scope of discovery to the statutory factors in N.J.S.A. 2A:34-23(n) and the method for gathering evidence to a limited number of written interrogatories and production of documents. The judge also has the discretion to permit the deposition of the parties.

## II

## CHILD CUSTODY MODIFICATION

Defendant's current parenting time arrangement allows his daughter to stay with him on Tuesdays and Thursdays, from 6:00 p.m. to 8:00 p.m., and on alternate weekends, from Friday through Sunday night. Defendant claims that over the past several months, his teenaged daughter becomes "sad and sullen as the time approaches for our weekend parenting time to end." In support of his request to modify the current custodial arrangement, defendant emphasizes that he purchased a home two miles away from plaintiff's residence in Paramus; the child has her own bedroom in that house.

In her certification in response to defendant's motion, plaintiff claimed defendant "had and still has a serious drinking problem." Plaintiff also noted that defendant "rents his basement to a single male on weekends who may have similar problems[.] . . . It is for this reason I am nervous when [the child] has to spend overnights in [d]efendant's house." Plaintiff also alleged

9

that defendant was violent and unduly possessive during their marriage. With respect to her child's well-being, plaintiff alleged that her daughter "returns home telling me that her father degrades whatever activity [the child] is interested in participating. He is attempting to mold [her] into the isolationist he is."

Plaintiff and defendant acknowledged in their respective certifications that their daughter has participated in psychotherapy. But they disputed whether the therapy furthers her best interests and sought the court's intervention on the matter. The language in the parties' certifications reveals that they inflexibly maintain conflicting positions about the best interests of their teenaged daughter.

Addressing this issue, the motion judge made the following ruling:

> So I'm going to order that in lieu of a plenary hearing on the custody issue, I don't believe that we need to have . . . joint residential custody. I don't think [defendant] made a showing that [the child's] life needs to be disrupted. I understand that they live only two miles apart from each other, but I agree with plaintiff's counsel, I don't think that her life needs to be disrupted to that extent, but I do believe that the defendant should be entitled to more time with the child.
>
> And I think given . . . the fact that the parties agreed to have a particular parenting time schedule back in 2012, it should be

10

> enforced, including overnights at the defendant's residence.

Defendant argues the motion judge erred in reaching this decision without addressing any of the factors in N.J.S.A. 9:2-4. We agree. "In contested cases, the court is required to make a record of its reasons for its custody decision[.]" Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (citing N.J.S.A. 9:2-4f). It also "must reference the pertinent statutory criteria with some specificity[.]" Ibid. (quoting Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994)). Absent the statutory factors, a court cannot determine if a custodial arrangement serves the best interests of a child. D.A., supra, 438 N.J. Super. at 450.

Although not raised by the parties, we are compelled to note that "[i]n family actions in which the court finds that either the custody of children or parenting time issues, or both, are a genuine and substantial issue, the court shall refer the case to mediation in accordance with the provisions of [Rule] 1:40-5." R. 5:8-1 (emphasis added). Finally, given the child's age, we also recommend that the Family Part consider whether it would be appropriate to interview the child as provided by Rule 5:8-6. See also D.A., supra, 438 N.J. Super. at 455 (holding "the decision whether to interview a child in a contested custody case is left to the sound discretion of the trial judge").

III

Conclusion

We reverse the ruling of the Family Part and remand for the court to permit defendant to conduct limited discovery to determine: (1) whether defendant can prove plaintiff is not entitled to limited duration alimony under Article III, Subsection 3.3(d) of the PSA, because she cohabitates with an unrelated man under N.J.S.A. 2A:34-23(n); and (2) whether changing the custodial arrangement of the parties' teenaged daughter serves her best interests. In making these determinations, the Family Part shall apply the factors in N.J.S.A. 9:2-4, refer the case to mediation under Rule 5:8-1, and consider interviewing the child under Rule 5:8-6. We leave the scope and method of discovery to the sound discretion of the Family Part.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0441-15T2