**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4023-18T1

BEATRIZ GARCIA-TRAVIESO,

    Plaintiff-Respondent,

v.

MICHAEL GARCIA-TRAVIESO,

    Defendant-Appellant.

_____

Submitted March 16, 2020 – Decided April 14, 2020

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0737-13.

Drisgula & Thatcher, LLC, attorneys for appellant (Candice L. Drisgula, of counsel; Alisa H. Thatcher, of counsel and on the briefs).

Atkins, Tafuri, & Minassian, PA, attorneys for respondent (Robert J. Tafuri and Christian Louis Beane, on the brief).

PER CURIAM

Defendant Michael Garcia-Travieso appeals from that part of an April 12, 2019 Family Part order denying his motion to terminate his alimony obligation to his former wife, plaintiff Beatriz Garcia-Travieso, based on her alleged cohabitation with O.H. ("Oscar").[1] The court also denied defendant's request for a plenary hearing and to permit discovery on the cohabitation issue. We affirm.

## I.

The parties were married on May 7, 1993 and have three children together. A dual judgment of divorce, with an accompanying matrimonial settlement agreement, was entered by the court on April 21, 2014 ("Agreement"). The Agreement required defendant to pay plaintiff $14,000 per month in alimony terminating upon either party's death or plaintiff's remarriage. The Agreement further provided defendant's alimony obligation "may be modified or terminated upon the cohabitation of [plaintiff] pursuant to the law at that time."

In defendant's eleven-page certification accompanying his application, he certified that Oscar: 1) was actively involved in plaintiff's family and life events, 2) was a significant part of the children's lives, 3) and plaintiff vacationed together on several occasions, 4) assisted plaintiff with household

---

[1] We use a pseudonym as Oscar is not a party to the litigation.

chores, 5) was present at plaintiff's home on a regular basis, 6) loaned plaintiff approximately $50,000 to complete the construction of her home, and 7) and plaintiff's relationship has become "increasingly committed, exclusive[,] and marriage like."

Defendant further maintained that Oscar partially funded his daughter's quinceañera, or fifteenth birthday celebration, and that his entire family attended the event. He noted that Oscar's family members were called for the candle ceremony, which was "an indication of the level of closeness reached between our children and [Oscar's] family." Defendant also emphasized that Oscar gave a speech during the celebration and offered his opinion that it "became apparent to [him] after attending [the event] that . . . [p]laintiff and [Oscar] could not possibly have reached this level of closeness and intimacy, especially the bond between their . . . families and [the] children by truly living in separate households."

Defendant also supported his application with a report from a private investigator. Defendant maintained the report established that plaintiff and Oscar were involved in an intimate, mutually beneficial family relationship based on Oscar staying overnight regularly at plaintiff's residence, driving plaintiff's vehicle, performing household duties like shoveling snow, residing in

plaintiff's home when she was not present, changing clothes while at the residence, carrying shopping bags and boxes into plaintiff's residence, having his own parking space in the attached garage, and going for a walk or run while at plaintiff's residence.

Plaintiff filed an opposing certification in which she attested that her relationship with Oscar began during the pendency of her divorce with defendant and the extent and scope of that that relationship remained unchanged since that time. She specifically certified that their relationship "is not marriage like" as they do not function as a family unit with the children, and Oscar has resided in the same apartment in Connecticut for the last ten years and pays his own expenses. She acknowledged that she borrowed $25,000 from Oscar to complete construction of her home, but certified that she repaid him in November 2014.

Plaintiff confirmed that she and Oscar vacationed together but clarified that they typically covered their own expenses on vacations. As to the parties' daughter's quinceañera celebration, plaintiff acknowledged that Oscar attended and made a "toast," but he did not pay anything towards the cost of the event.

With respect to the findings contained in the investigator report, plaintiff explained that over seventy-two percent of the photographs were taken on weekends. On days that Oscar was captured by the static, unmanned camera on

4

weekdays, plaintiff certified that those were the result of Oscar having client meetings in New Jersey the following day or that there were specific social events and vacations that justified having him stay in the residence on a particular night. Plaintiff noted that Oscar does not stay in the residence when she is not there, he does not have a set of keys or garage door opener, does not know the alarm code, and only brings his personal items into the house when he stays. Plaintiff further stated that Oscar does not contribute to her mortgage, taxes, or insurance on the home, does not pay utility bills, does not have mail sent to her residence, they are not each other's emergency contact, and neither is listed as a beneficiary on the other's accounts. In support of her certified statements, plaintiff attached the deed from her home, utility bills, various credit card statements and receipts, and a bank statement showing payment to a landscaper.

Oscar also submitted a certification. In addition to certifying to many of the same facts attested to by plaintiff, he confirmed that he resides in Connecticut full-time and primarily commutes from that location to his workplace in New York City. He further noted that many of the days he was observed at plaintiff's residence on weekdays were for either specific client meetings in the northern New Jersey area or vacations. Oscar included with his

certification a copy of his Connecticut lease agreement, bills connected to that residence, receipts for various living and vacation expenses, and a copy of the $25,000 check for plaintiff's repayment of the personal home construction loan.

As noted, in an April 12, 2019 order, the court denied defendant's motion to terminate or modify defendant's alimony modify, his request for a plenary hearing, discovery and for counsel fees.[2] During oral argument, the court noted defendant "indicated to the [c]ourt that . . . [Oscar] gave [plaintiff] $50,000 . . . to renovate a home," however, "it was $25,000 and she paid him back in 2014," which was more similar to a loan than financial dependence. The court also stated that defendant "failed . . . to show that there has been any financial support whatsoever." The court further found that Oscar "has a separate job" and is "taking care of himself," and disagreed with defendant's argument that just because plaintiff and Oscar were in a close dating relationship from 2014 to present means there has been a change of circumstances warranting modification of the alimony provision in the Agreement. The court reasoned that "[t]here's a relationship with [Oscar's] family by virtue of the fact that they're together" and

---

[2] Defendant has not appealed that portion of the court's April 12, 2019 order denying his application for attorney's fees.

A-4023-18T1

emphasized that "most of the time that he was [at plaintiff's residence] was on the weekends."

The court concluded that defendant "has [not] established or met the burden of a prima facie showing that there has been a change of circumstances in this matter." The court stated that it considered "[plaintiff's] certification, [Oscar's] certification, the exhibits that had been provided to the Court, receipts to the Court regarding financials, and . . . the private investigator [materials], [and it] did not find that that was anywhere sufficient" to grant defendant the relief requested. The court noted that the dates when the private investigator captured Oscar at the residence were "extremely stale," and the one incident of Oscar shoveling snow "does not rise to maintenance of the property [and] sharing responsibilities regarding the home and the property."

## II.

Defendant first contends that "[a]nalysis of the pre-amendment case law . . . warrants a review and/or termination of [d]efendant's support obligation, or at the very least, [d]efendant has demonstrated a [prima facie] case of changed circumstances warranting discovery and a plenary hearing."[3] Defendant states

---

[3] Prior to the Legislature's adoption of the 2014 amendments to the alimony statute, the legal criteria for cohabitation was not specified by statute, but it was

he has demonstrated that plaintiff and Oscar "had undertaken duties and privileges that are commonly associated with marriage and they function as a family unit," and he "confirmed that the parties' children had grown to know and bond with [Oscar] and members of [his] family, which would be impossible if . . . the parties only saw each other socially on weekends." Defendant concludes that though he was not able to establish plaintiff and Oscar resided together in a single household, "taken as a whole, based upon the interactions between [Oscar] and [p]laintiff, [d]efendant has demonstrated prima facie changed circumstances" and he "should have been entitled to discovery and a plenary hearing." We disagree.

The decision of a family court to modify alimony is reviewed under an abuse of discretion standard. Larbig v. Larbig, 384 N.J. Super. 17, 23 (App.

---

instead embodied in case law. See e.g., Konzelman v. Konzelman, 158 N.J. 185, 195-203 (1999). The 2014 amendments, which became effective on September 10, 2014, subsequently defined cohabitation as "involv[ing] a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household" and set forth seven factors a court must consider to determine whether cohabitation is occurring. N.J.S.A. 2A:34-23(n). As noted, the Agreement permits termination of defendant's alimony obligation based on either party's death, plaintiff's remarriage, or her cohabitation "pursuant to the law at that time." Because the parties have briefed the cohabitation issue under the pre-2014 caselaw and the 2014 amendments, we have addressed the arguments accordingly.

Div. 2006). Further, "[w]hether an alimony obligation should be modified based upon a claim of changed circumstances rests within the Family Part judge's sound discretion." Id. at 21 (citing Innes v. Innes, 117 N.J. 496, 504 (1990)).

A party seeking modification of an alimony agreement based on cohabitation must first establish a prima facie case of cohabitation before a court orders discovery and a plenary hearing. Lepis v. Lepis, 83 N.J. 139, 157, 159 (1980). "[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary." Id. at 159 (citing Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)). "In determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties. Conclusory allegations would, of course, be disregarded." Ibid.

Cohabitation by a dependent ex-spouse constitutes a changed circumstance that could justify a modification of the supporting ex-spouse's alimony obligation. Gayet v. Gayet, 92 N.J. 149, 154-55 (1983). Whether the relationship between a dependent spouse and third party is tantamount to marriage or cohabitation requires an analysis of the economic benefits of the relationship. Garlinger v. Garlinger, 137 N.J. Super. 56, 65, (App. Div. 1975); see also Reese v. Weis, 430 N.J. Super. 552, 571 (App. Div. 2013) (holding

modifications of alimony are warranted when the dependent spouse economically benefits from cohabitation).

In Gayet, our Supreme Court held that cohabitation of the dependent former spouse constitutes a change of circumstances justifying the reduction or termination of alimony only if the economic benefit inuring to either cohabitor is "sufficiently material to justify relief." Konzelman, 158 N.J. at 196 (citing Gayet, 92 N.J. at 154-55). "Under this economic needs test, the reduction in alimony is granted in proportion to the contribution of the cohabitor to the dependent spouse's needs." Ibid. (citing Gayet, 92 N.J. at 154-55). "[T]he inquiry regarding whether an economic benefit arises in the context of cohabitation must consider not only the actual financial assistance resulting from the new relationship, but also should weigh other enhancements to the dependent spouse's standard of living that directly result[s] from cohabitation." Reese, 430 N.J. Super. at 557-58.

Moreover, in determining whether a dependent ex-spouse's relationship rises to the level of cohabitation, our Supreme Court stated:

> Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and

> recognition of the relationship in the couple's social and family circle.
>
> [Konzelman, 158 N.J. at 202.]

Cohabitation requires "stability, permanency and mutual interdependence." Ibid. The court must determine whether the relationship "bears the 'generic character of a family unit as a relatively permanent household.'" Gayet, 92 N.J. at 155 (citing State v. Baker, 81 N.J. 99, 108 (1979)). "A mere romantic, casual[,] or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony." Konzelman, 158 N.J. at 202.

Here, the court found that defendant did not sustain his burden to show that there has been a change of circumstances as he merely demonstrated that there was a significant passage of time in the relationship, increased familiarity between Oscar and plaintiff's families, and Oscar staying in the residence on weekends plus some weekdays. The court indicated that there was a lack of evidence pointing to any economic interdependence between plaintiff and Oscar. As to residing in plaintiff's home, the court emphasized that Oscar maintained his own home in Connecticut and paid for his own expenses. All these findings were supported by the motion record and we find no abuse in the court's discretion when it concluded that the record presented by defendant

failed to establish a prima facie showing of cohabitation warranting either discovery or a plenary hearing.

## III.

Defendant next maintains that the 2014 amendments provide that "cohabitation does not require a payee and cohabitant to live together on a full-time basis," and that he has "submitted sufficient evidence to establish that cohabitation exists." He further maintained that under the amended statute, "the economic contribution requirement is no longer the primary factor to be considered in an alimony modification analysis as it pertains to cohabitation, as required by the prior case law."

Defendant also states that the court "no longer needs to find an economic benefit to an alimony payee from a paramour [or vice versa] to terminate or to suspend alimony" and that the court now "just has to find the existence of a mutually supportive, intimate personal relationship in which a couple undertakes the duties and privileges commonly associated with marriage." He concludes that "he satisfied the requirement of establishing [p]laintiff's relationship bears that character and that the trial court erred by requiring [him] to prove financial interdependence . . . as a prerequisite for establishing a [prima facie] showing." We disagree that the facts presented to the court warranted

modification of defendant's alimony obligation or further discovery under the 2014 amendments.

We recently held that "the changed circumstances standard of Lepis, 83 N.J. at 157, continues to apply to a motion to suspend or terminate alimony based on cohabitation following the 2014 amendments to the alimony statute, N.J.S.A. 2A:34-23(n)." Landau v. Landau, 461 N.J. Super. 107-08 (App. Div. 2019). Indeed, after carefully reviewing the amendments, "we [saw] no indication the Legislature evinced any intention to alter the Lepis changed circumstances paradigm when it defined cohabitation and enumerated the factors a court is to consider in determining 'whether cohabitation is occurring' . . . ." Id. at 116 (quoting N.J.S.A. 2A:34-23(n)). We determined the party seeking modification still bears the burden of establishing "[a] prima facie showing of changed circumstances . . . before a court will order discovery of an ex-spouse's financial status." Id. at 118 (alteration in original) (quoting Lepis, 83 N.J. at 157).

Under the statute, the courts "shall consider" the following factors "[w]hen assessing whether cohabitation is occurring[:]"

> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person . . . ; and

(7) All other relevant evidence.

[N.J.S.A. 2A:34-23(n).]

Furthermore, "[a] court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis."  N.J.S.A. 2A:34-23(n).  Our Supreme Court nevertheless emphasized:

We do not today suggest that a romantic relationship between an alimony recipient and another, characterized by regular meetings, participation in mutually appreciated activities, and some overnight stays in the home of one or the other, rises to the level of cohabitation.  We agree that this level of control over a former spouse would be unwarranted . . . .

[Quinn v. Quinn, 225 N.J. 34, 54 (2016).]

Although the better practice would have been for the judge to identify separately the aforementioned factors it considered, we are satisfied from our review of the court's oral decision that it considered those factors.  For example,

14

the court acknowledged the lack of financial dependence and intertwined finances between plaintiff and Oscar (N.J.S.A. 2A34-23(n)(1)), that Oscar maintained a separate residence and paid for his own living expenses (N.J.S.A. 2A34-23(n)(2)), the increased familiarity between plaintiff and Oscar's families (N.J.S.A. 2A34-23(n)(3)), how often the two spent time together and the duration of their relationship (N.J.S.A. 2A34-23(n)(4)), and whether defendant's evidence was sufficient to demonstrate that they shared household chores, (N.J.S.A. 2A34-23(n)(5)).

Despite defendant's assertion that the court no longer needs an economic benefit between an alimony recipient and his or her paramour, defendant fails to address the first two cohabitation factors of intertwined finances and joint responsibility for living expenses. As noted by the trial court and conceded by defendant, other than a one-time loan of $25,000 that was subsequently paid in 2014, defendant failed to establish that there was any financial comingling or interdependence between plaintiff and Oscar. Indeed, the objective proofs, supported precisely the opposite conclusion.

Giving defendant all favorable inferences from the motion record, he demonstrated that plaintiff and Oscar have been in a long-term relationship since 2014 (a fact well-known prior to defendant's agreement to pay plaintiff alimony

in accordance with the Agreement), that their social and family circles recognize that relationship, and that they see each other every weekend plus some weekdays. With respect to household chores, out of the thirty-nine days that defendant surveilled plaintiff's residence, Oscar was observed taking out the garbage once, shoveling snow once, and carried in boxes or shopping bags three times. Thus, even though N.J.S.A. 2A:34-23(n) states that a court may not find an absence of cohabitation solely on the grounds that they do not live together, we agree with the court that the other evidence in the motion record was wholly insufficient to establish a prima facie showing of changed circumstances based on cohabitation.

IV.

Next, defendant, relying on Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015), argues that "[b]ased upon the parties' certifications alone, there are numerous disputed and conflicting facts," which "can only be resolved through a plenary hearing." Defendant further argues that "[t]he trial court's decision ignores well settled law that when conflicting certifications are sufficiently in dispute, a plenary hearing is necessary to determine the facts." We are not persuaded.

It is well-settled that disputes of material facts should not be resolved based on competing certifications. Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006). We have stated that such hotly contested certifications have the "unfortunate effect of yielding more heat than light, ultimately leaving unresolved the central issues raised by the parties." D.A. v. R.C., 438 N.J. Super. 431, 439 (App. Div. 2014). Plenary hearings, however, are not required "in every contested proceeding . . . relating to alimony or support." Shaw, 138 N.J. Super. at 440. Only where the parties' submissions demonstrate there are genuine issues as to material facts must the court conduct a hearing to resolve the dispute. Ibid. (citing Segal v. Lynch, 211 N.J. 230, 264-65 (2012)); Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004).

As noted, the evidence defendant presented in his motion failed to establish a prima facie showing of cohabitation under the pre-2014 case law or in accordance with the 2014 amendments and interpretive cohabitation decisions. At best, defendant's proofs showed that plaintiff and Oscar spent weekends and some weekdays together, occasionally vacationed together, and participated in various social and family functions together as a couple.

Plaintiff and Oscar's certifications attached a variety of objective proofs, including copies of their bills and finances, Oscar's rental lease agreement,

receipts for various expenses, and a check for proof that plaintiff repaid the $25,000 loan. This evidence provided objective proof that plaintiff and Oscar were not cohabitating and responded to defendant's conclusory cohabitation allegations which were based primarily on a long-term dating relationship, with the expected significant amount of time spent together, and an increasing familiarity among each other's family. Under these circumstances, a plenary hearing was not required to resolve the issues raised in the motion.

V.

Defendant raises a new argument in his reply brief. Specifically, he maintains that "[a]llowing an application to fail, prior to discovery, due to lack of financial interdependence would be inequitable and would defy the intent of the statute." He further argues that "the evidence presented . . . and admitted . . . by [p]laintiff demonstrates a [prima facie] showing of the changed circumstance of cohabitation" and that "[t]he trial court erred by focusing primarily on the financial interdependence factor, without any consideration to the length of the relationship or the other evidence presented by [him]." We reject these contentions as both procedurally improper and substantively without merit.

18

Procedurally, a party is not permitted to raise new or expanded arguments in a reply brief.  See State v. Smith, 55 N.J. 476, 488 (1970) (stating that a party is not permitted to use a reply brief to enlarge his main argument or advance a new argument); see also Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").

In any event, defendant's claims are without merit.  As noted, there is no indication that the trial court exclusively relied on the lack of financial interdependence as the deciding factor in denying defendant's application.  The court clearly considered the parties' certifications, the exhibits provided which included financial information, and defendant's private investigator report.  Based on that evidence, the court found that defendant not only lacked support to indicate intertwined finances, but it also found that there was no indication that plaintiff and Oscar shared responsibility for living expenses or household chores.

We are satisfied that the court properly determined that defendant failed to make a prima facie showing based on the criteria set forth in N.J.S.A. 2A:34-23(n).  As noted, defendant failed to demonstrate any commingled finances, joint responsibility for living expenses, sharing of household chores, or an

19

enforceable promise of support from Oscar to plaintiff. A finding of cohabitation and termination of alimony rests within the sound discretion of the Family Part judge, see Innes, 117 N.J. at 504, and from what we glean in the record and the court's oral decision, defendant demonstrated a mere romantic relationship "characterized by regular meetings, participation in mutually appreciated activities, and some overnight stays . . . [which does not] rise[] to the level of cohabitation." Quinn, 225 N.J. at 54.

VI.

In sum, even considering all of the evidence proffered by defendant, we remain convinced of the soundness of the motion judge's finding that defendant has not presented a prima facie case. We, therefore, conclude defendant's assertions of changed circumstances due to plaintiff's alleged cohabitation were insufficient to justify a modification or termination of his alimony payments and did not warrant further discovery or a plenary hearing. To the extent that we have not addressed any of his remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

20                                                          A-4023-18T1